## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| PHILIP G. HUTSLER and ) | |
| SUSAN M. HUTSLER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:12-CV-2184 CAS |
| ) | |
| WELLS FARGO HOME MORTGAGE, INC. ) | |
| and WELLS FARGO BANK, N.A., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on defendant Wells Fargo Bank, N.A.'s motion to dismiss plaintiffs' second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court will grant in part and deny in part defendant's motion.

**I.     Background**

This case arises from the foreclosure of plaintiffs' real property located at 15408 Fort de France Lane in St. Louis County, Missouri. On October 22, 2012, plaintiffs filed a petition against defendant Wells Fargo Home Mortgage, Inc. in the Circuit Court of St. Louis County, Missouri alleging violations of the Missouri Merchandising Practices Act ("MMPA").[1] Plaintiffs sought a temporary restraining order ("TRO") in state court to stop the foreclosure sale of their property. Plaintiffs allege the property was foreclosed on October 22, 2012. Later, the state court granted

---

[1] In its initial motion to dismiss, defendant stated that Wells Fargo Home Mortgage, Inc. is a division of Wells Fargo Bank, N.A. and not a separate entity. See Doc. 19 n.1. Plaintiffs filed a second amended complaint and correctly designated only Wells Fargo Bank, N.A. as a defendant.

plaintiffs a TRO to stop further sale of the property. Before the state court could conduct a hearing on plaintiffs' motion for a preliminary injunction, defendant removed the action to this Court.

Plaintiffs have since amended their complaint to mirror the complaint filed in In re Shelton, 481 B.R. 22 (Bankr. W.D. Mo. 2012), in which the bankruptcy court denied a mortgagee's motion to dismiss the complaint, which was based on the mortgagee's alleged violations of HUD regulations. Plaintiffs' second amended complaint, modeled after Shelton, alleges seven counts: violation of the MMPA (Count I); wrongful foreclosure in equity (Count II); wrongful foreclosure in tort (Count III); breach of the duty of good faith and fair dealing (Count IV); breach of contract (Count V); negligence (Count VI); and quite title (Count VII). Defendants move to dismiss plaintiffs' second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In response to defendant's motion, plaintiffs move to voluntary dismiss Counts III and VI of the second amended complaint, and oppose defendants' motion to dismiss the remaining five counts.

## II.   Legal Standard

On a motion to dismiss, the Court accepts as true the factual allegations contained in the complaint and grants the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations. See Lustgraaf v. Behrens, 619 F.3d 867, 872-73 (8th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Generally, courts must ignore materials that are outside the pleadings. Kulovic v. BAC Home Loans Serv., L.P., 2011 WL 1483374, *2 (E.D. Mo. Apr. 19, 2011). In addressing a motion to dismiss, however, courts "may consider documents attached to the complaint and matters of public and administrative record referenced in the complaint." Great Plains Tr. Co. v. Union Pac. R.R. Co., 492 F.3d 986, 990 (8th Cir. 2007) (citations omitted).

### III. Facts

In 2000, plaintiffs took out a construction loan to build a house located at 15408 Fort de France Lane in St. Louis County, Missouri (the "property"). The loan was evidenced by a Promissory Note and secured by a Deed of Trust. Plaintiffs' loan was insured by the Federal Housing Administration ("FHA"), which is now part of the Department of Housing and Urban Development ("HUD"). Through the FHA Insured Mortgage Program, HUD guarantees the lender it will earn a return for taking the risk of lending money to the homeowner and that it will be compensated for any losses in the event of default and foreclosure.

On December 20, 2001, plaintiffs refinanced their loan through Wells Fargo Home Mortgage, Inc., a division of defendant Wells Fargo Bank, N.A. ("defendant"). At the time of this refinancing, plaintiffs owed a balance of $160,652.00 on the mortgage note, and their home had an appraised value of $208,000.00.[2] In connection with the loan, plaintiffs signed a Deed of Trust (the "Deed of Trust") encumbering the property securing repayment of the Promissory Note. The Deed of Trust provides:

> (d) **Regulations of HUD Secretary**. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. The Security Instrument does

---

[2]In January 2013, the Property had a fair market value of $100,000.00. (2d Am. Compl. at ¶ 48).

> not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

Compl. ¶ 41; see also Pls.' Opp'n to Mot. to Dismiss, Ex. 2, Deed of Trust ¶ 9(d).

Because of financial difficulty, plaintiffs were unable to make their payments starting in January 2012. They contacted defendant in February to ask about loss mitigation relief. Plaintiffs and defendant exchanged various correspondence and documents from March through October 2012.

On October 22, 2012, the property was foreclosed. On November 20, 2012, the state court issued a TRO to stop any further sale of the property. A hearing was set in state court on plaintiffs' motion for a preliminary injunction, but defendant removed the action to this Court prior to the hearing and filed the instant motion to dismiss.

## IV.   Discussion

### A.   Count I—MMPA

In Count I, plaintiffs allege a violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 et seq. Under Missouri Revised Statute § 407.020.1:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.

In their second amended complaint, plaintiffs allege defendant violated the MMPA "in connection with the sale of the property and/or mortgage loan" in the following ways: (1) failing to provide them with loss mitigation opportunities as required by the Note and Deed of Trust and federal regulations; (2) charging foreclosure-related fees without first providing loss mitigation options; (3) failing to give plaintiffs notice of their right to request an "occupied conveyance" of


their home as required by federal regulations; (4) failing to consider plaintiffs' eligibility for loan modification pursuant to federal programs; (5) offering to consider plaintiffs for mortgage assistance while intending to foreclose on plaintiffs; (6) foreclosing on plaintiffs' home without explanation as to why they did not qualify for mortgage assistance; and (7) making plaintiffs wait before answering their telephone calls, and transferring plaintiffs' calls. (2d Am. Compl. at ¶ 56). The transaction at issue occurred on December 20, 2001, when plaintiffs refinanced their home loan through defendant. To survive a motion to dismiss under the MMPA, plaintiffs would have to allege sufficient factual matter to make it plausible on its face that defendant's actions during the foreclosure process in 2012 were "in connection with" the sale or advertisement of the mortgage loan in 2001.

The Missouri Court of Appeals for the Eastern District has addressed whether actions occurring after the initial sales transaction could be considered "in connection with" the initial sale. In Prof'l Debt Mgmt., the court looked for a "relationship in fact" between the advertising and sale of the merchandise and the unfair practices. State of Mo. ex rel. Koster v. Prof'l Debt Mgmt., LLC, 351 S.W.3d 668, 674 (Mo. Ct. App. 2011). In that case, the plaintiff sued defendant debt collector for allegedly deceptive and unfair practices. The court applied the statutory requirement that an unfair trade practice must be made "in connection with the sale or advertisement of any merchandise" to violate the MMPA. Id. at 675. It found that the unfair debt collection practices detailed in the petition were not alleged to have been made at the time of the advertising or purchase of the merchandise. Moreover, the debt collector was not a party to the initial sale. The court did not find the requisite "relationship in fact" required to state a cause of action under the MPA. "We are not persuaded that actions occurring after the initial sales transaction, which do not relate to any claims or representations made before or at the time of the initial sales transaction, and which are

taken by a person who is not a part to the initial sales transaction, are made 'in connection with' the sale or advertisement of merchandise as required by the MPA." Id. at 674.

This Court has also been unwilling to stretch the "in connection with" language of the MMPA to include events occurring years after the initial sale. In Willis v. U.S. Bank, N.A., the court dismissed plaintiffs' MMPA claim, finding inter alia that the alleged advertisement of the loan modification occurred "some twenty years" after the plaintiffs purchased their property, and had nothing to do with the purchase. Willis, 2012 WL 3043023, *3 (E.D. Mo. July 25, 2012). In Willis, there was simply no connection between the alleged unfair trade practice and the sale or advertisement of merchandise. Id. Similarly, in Hess v. Wells Fargo Home Mortg., the court found that the alleged misrepresentation—that the Deed of Trust was properly transferred—occurred years after the sale of the home and there was no relationship between the alleged unfair practice and the initial sale of the property. Hess, 2012 WL 872752, *4 (E.D. Mo. Mar. 14, 2012) (granting defendant's motion to dismiss). Although the instant case is distinguishable from Willis and Hess because Wells Fargo was a party to the loan refinancing in 2001, these cases are instructive.

Here, plaintiffs allege that defendant did not comply with certain HUD regulations in 2012. They allege that Wells Fargo "used deception, fraud, false pretense, false promise, misrepresentation or unfair practice, or concealed, suppressed or omitted a material fact in connection with the sale of the property and/or mortgage loan . . . ." (Compl. ¶ 56). Defendant's alleged misconduct includes failing to provide loss mitigation opportunities, charging foreclosure-related fees, and failing to notify plaintiffs of a right to request an occupied conveyance. (Id.). None of this alleged misconduct, however, "relates to the sale or advertisement of merchandise," particularly the loan refinancing that Wells Fargo performed in 2001. Rather, the misconduct relates to the foreclosure process initiated in 2012. The purported violations of HUD regulations in 2012, occurred eleven

years after plaintiffs' refinancing. These alleged unfair practices have no relationship in fact to the advertisement or sale of the loan refinancing in 2001. Similar to the decisions in Willis and Hess, the Court finds that any actionable conduct during the foreclosure process in 2012 was not "in connection with" the sale or advertisement of the refinancing of plaintiffs' loan in 2001. Therefore, plaintiffs' allegations of wrongful conduct are outside the scope of the MMPA, and they cannot state a plausible claim to relief.

> B.    Count V—Breach of Contract

In Count V, plaintiffs allege that defendant breached the terms of the Deed of Trust by foreclosing on plaintiffs' home without pursuing loss mitigation options as required by paragraph 9(d) of the deed of trust. Plaintiffs argue that paragraph 9(d) incorporates the Code of Federal Regulations into their contract with defendant. As previously noted, paragraph 9(d) states:

> **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. The Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

Compl. ¶ 41.

Plaintiffs contend that paragraph 9(d)'s reference to HUD regulations incorporates those regulations into their contract with defendant, creating substantive contractual rights.

Defendant disagrees. It argues that the references to the HUD regulations in paragraph 9(d) do not demonstrate the parties intent to incorporate the regulations into their mortgage agreement. Defendant relies primarily on an Illinois state court case, Hayes v. M&T Mortg. Corp., 906 N.E.2d 638, 642 (Ill. App. Ct. 2009). In Hayes, the court found the provisions of paragraph 9(b) "reflect only an acknowledgment that the lender's foreclosure rights under the mortgage are subordinate to applicable HUD regulation; they do not demonstrate an intent to make each loan regulation

enforceable under the parties agreement." See id.; see also Dixon v. Wells Fargo Bank, N.A., 2012 WL 4450502, *8 (E.D. Mich. Sept. 25, 2012); Wells Fargo Home Mortg., Inc. v. Neal, 398 Md. 705, 715 (Md. 2007).

Defendant is correct that ordinarily HUD regulations govern the relationship between the mortgagee (i.e., defendant) and the government, and not the relationship between the mortgagee and the mortgagor. See Neal, 398 Md. at 719-20. Additionally, a number of courts have held that there is no private cause of action for violation of HUD regulations. See, e.g., id. at 705 (citing authority rejecting argument that violation of HUD regulations creates a private cause of action).

An exception has been recognized, however, where the HUD regulations are incorporated into the contract between mortgagee and mortgagor. See Lindsey v. JPMorgan Chase Bank Nat'l Assoc., 2013 WL 2896897 *14 (N.D. Tex. June 13, 2013) ("Although the . . . HUD regulations do not provide mortgagors with a private remedy, a violation of HUD regulations may create a private cause of action if the regulations are explicitly incorporated into [an] agreement.") (internal quotations omitted); see also Bagley v. Wells Fargo Bank, N.A., 2013 WL 350527, **4-5 (E.D. Va. Jan. 29, 2013); In re Shelton, 481 B.R. 22 (Bankr. W.D. Mo. 2012); Motten v. Chase Home Fin., 831 F. Supp. 2d 988, 1005 (S.D. Tex. 2011). These courts distinguish the plaintiff's cause of action, based on breach of contract, from a suit to enforce HUD regulations "'under some vague and likely non-existent cause of action allowing a member of the public to take upon himself the role of regulatory enforcer.'" Shelton, 481 B.R. at 29 (quoting Mullins v. GMAC Mort., LLC, 2001 WL 1298777, *3 (S.D. W. Va. Mar. 31, 2011). In this circumstance, courts have found that claims for failure to comply with HUD regulations can be brought as breach of contract claims.[3]

---

[3]Defendant argues an alternative ground for dismissing plaintiffs' contract claim: that the pre-existing duty rule precludes plaintiffs from asserting a breach of contract claim. See, e.g.,

As recognized by the court in Shelton, there is a split of authority on the question of whether a debtor can recover damages under a breach of contract theory in a case such as this. See id. at **29-31. On defendant's motion to dismiss, the Court need only decide whether plaintiffs have pled a plausible claim for breach of contract. The Court finds that plaintiffs have pled a plausible claim. Paragraph 9(d) states that the HUD regulations limit defendant's rights to foreclose: "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." (Deed of Tr. at ¶ 9(d)). Viewed in the light most favorable to plaintiffs, they have pled facts that, if true, establish that defendant violated several HUD regulations regarding its servicing responsibilities. See 2d Am. Compl. at ¶ 42. These violations include failing to take into account plaintiffs' situation and circumstance in an effort to minimize default; failure to arrange a face-to-face meeting with plaintiffs; and failure to provide notice of the right of occupied conveyance. Plaintiffs have alleged the HUD servicing requirements were not met, and therefore the HUD regulations did not authorize defendant to foreclose. See 24 C.F.R. § 203.606. Because plaintiffs' contract states that it "does not authorize . . . foreclosure if not permitted by the regulations of the Secretary," the contract between plaintiffs and defendant did not authorize foreclosure. Plaintiffs alleged defendant foreclosed on the property, and they were damaged. Plaintiffs have stated a plausible claim for breach of contract, and defendant's motion to dismiss Count V for breach of contract will be denied.

    C.    Count IV—Breach of Duty of Good Faith and Fair Dealing

---

Dixon, 2012 WL 4450502, *8. Defendant suggests the contract fails for lack of consideration. (Def. Reply at 9). But if Wells Fargo is under no contractual obligation, there is no contract. The argument is underdeveloped, and the Court is leery of making a determination that the standardized FHA Deed of Trust, which plaintiffs signed, fails for lack of consideration.

In Count IV, plaintiffs assert defendant breached its duty of good faith and fair dealing as a result of its alleged failure to follow the FHA regulations. (2d Am. Compl. at ¶ 69). Defendant moves to dismiss this Count, stating that its compliance with the HUD regulations was not an "expected benefit" under the contract.

The duty of good faith and fair dealing under Missouri law "prevents one party to the contract from exercising a judgment conferred by the express terms of [the] agreement in such a manner as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract." Stone Motor Co. v. General Motors Corp., 293 F.3d 456, 466 (8th Cir. 2002) (quoting Amecks, Inc. v. Southwestern Bell Tel. Co., 937 S.W.2d 240, 243 (Mo. Ct. App. 1996)). "'[T]he implied duty of one party to cooperate with the other party to a contract to enable performance and achievement of expected benefits is an enforceable right.'" Id. at 467 (quoting Koger, 28 S.W.3d at 412). The implied duty of good faith and fair dealing is "incapable of altering the express terms of [an] agreement" and "cannot give rise to new obligations not otherwise contained in a contract's express terms." Stone Motor, 293 F.3d at 466 (internal quotation marks and quoted case omitted).

Accepting as true the factual allegations in the second amended compliant, and granting the plaintiff the benefit of all reasonable inferences, the Court finds that plaintiffs have sufficiently pled that defendant evaded the spirit of the transaction and denied them the expected benefit of the HUD regulations. As stated in Part IV.B., supra, plaintiff's contract stated that it did not authorize foreclosure if not permitted by the HUD regulations. Defendant's alleged conduct denied plaintiffs of this expected benefit under the contract. Defendant's motion to dismiss plaintiffs' claim for breach of the duty of good faith and fair dealing is denied.

D. Count II—Wrongful Foreclosure (Equity)

Count II of plaintiffs' second amended complaint seeks equitable relief for the wrongful foreclosure of their home.  If a mortgagee had the right to foreclose, but the sale was otherwise void or voidable, then the remedy is a suit in equity to set the sale aside.  Nevertheless, "A mortgagee's act of commencing a foreclosure cannot be wrongful when there is a clear right to foreclose." Peterson v. Kansas City Life Ins. Co., 98 S.W.2d 770, 773 (Mo. 1936) (citation omitted).  A court may grant equitable relief and set aside a foreclosure sale as invalid "when a circumstance denies the mortgagee the right to cause the power of sale to be exercised," such as where the foreclosing party does not hold title to the promissory note, the mortgagor has not defaulted at the time of first publication of the notice of sale, the note has been paid, or the deed of trust authorizes sale upon the request of its holder and no such request has been given. Graham v. Oliver, 659 S.W.2d 601, 603-04 (Mo. Ct. App. 1983) (citing cases).  "'A mortgagor . . . can invoke the aid of equity to set aside a foreclosure sale only if fraud, unfair dealing or mistake was involved in the trustee's sale.'" Ice v. IB Property Holdings, LLC, 2010 WL 1936175, at *3 (W.D. Mo. May 13, 2010) (quoting American First Fed., Inc. v. Battlefield Ctr, L.P., 282 S.W.3d 1, 8-9 (Mo. Ct. App. 2009)).

Plaintiffs assert that defendant's "failure to act in good faith would constitute 'unfair dealing' for purposes of triggering equitable principles."  (Opp'n at 9).  In the second amended complaint, plaintiffs state defendant wrongfully foreclosed the Deed of Trust "in violation of FHA loss mitigation regulations."  (2d Am. Compl. at ¶ 61).  For specifics, plaintiffs cite to paragraph 69 of their second amended complaint for allegations of "unfair dealing," including: defendant's failure to pursue loss mitigation procedures, failure to consider plaintiffs' request for loss mitigation relief; failure to contact plaintiffs to arrange a face-to-face meeting; and failure to provide timely notice of the right to request an "occupied conveyance."  (Id. at ¶ 69).

Under Missouri law, the Court concludes that plaintiffs' second amended complaint states a plausible claim for wrongful foreclosure in equity. Plaintiff have alleged circumstances that denied defendant of the right to exercise the power of sale. Defendant's alleged failure to pursue loss mitigation, consider plaintiffs' request for loss mitigation, arrange a face-to-face meeting with plaintiffs, and discuss the right to request an "occupied conveyance" plausibly rises to the level of unfair dealing of such nature and character to cause a defect in the process or execution of the foreclosure. See, e.g., Morris v. Wells Fargo Home Mortg., 2011 WL 3665150 at *2 (E.D. Mo. Aug. 22, 2011) (citing Graham v. Oliver, 659 S.W.2d 601, 603-04) (Mo. Ct. App. 1983) and Williams v. Kimes, 996 S.W.2d 43, 45 (Mo. 1999) (courts may set aside foreclosure sale as void when a "defect is so great that it goes to the very right or power to foreclose").

E.   Count VII—Quiet Title

In Count VII for quiet title, plaintiffs allege that "[b]ecause the foreclosure sale was invalid and unlawful, plaintiffs hold the exclusive right, title and interest to the property, subject to whatever remaining mortgage interest which [defendant] may have." (2d Am. Compl. at ¶ 82).

Under Missouri law, any person claiming title, estate, or interest in real property "may institute an action against any person or persons having or claiming to have any title, estate or interest in such property . . . ." Mo. Rev. Stat. § 527.150(1). To state a cause of action to quiet title, a plaintiff must allege: (1) ownership in the described real estate; (2) that the defendant claims some title, estate or interest to or in said premises; and (3) said claim is adverse and prejudicial to plaintiff. Howard v. Radmanesh, 586 S.W.2d 67, 67 (Mo. Ct. App. 1979) (citing Randall v. St. Albans Farms, Inc. 345 S.W.2d 220, 221 (Mo. 1961)).

Plaintiffs' contention of superior title to the property relies on their wrongful foreclosure claim. They assert they should still own their property because the property should not have been

foreclosed without offering plaintiffs loss mitigation opportunities. Count VII meets the pleading requirements for a cause of action for quiet title. The Court will therefore deny defendant's motion to dismiss Count VII.

### F. Plaintiffs' Motion to Voluntarily Dismiss Counts III and VI

In their opposition to defendant's motion to dismiss, plaintiffs "move to dismiss Counts III and VI of their second amended complaint without prejudice." (Pls.' Opp'n at 1). Defendant opposes the dismissal of these claims without prejudice, and seeks to have the claims dismissed *with* prejudice.

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff "may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." This voluntary dismissal is without prejudice unless the notice states otherwise. See Fed. R. Civ. P. 41(a)(1)(A) and (B). Defendant has filed neither an answer or a motion for summary judgment, and therefore plaintiffs have the right to voluntarily dismiss Counts III and VI without prejudice. The Court will construe plaintiff's motion to dismiss Counts III and VI of the second amended complaint as a notice of dismissal of Counts III and VI without prejudice pursuant to Federal Rule 41(a)(1)(A).

## V. Conclusion

For the foregoing reasons, the Court will grant defendant's motion to dismiss Count I for failure to state a claim under the MMPA, and deny the motion in all other respects.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to dismiss Counts III and VI of their second amended complaint without prejudice, construed as a notice of voluntary dismissal without prejudice of Counts III and VI pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Wells Fargo Bank, N.A.'s motion to dismiss Counts I, II, IV, V, and VII of plaintiffs' second amended complaint is **GRANTED in part** and **DENIED in part**. [Doc. 37] The motion is **GRANTED** as to Count I of plaintiffs' second amended complaint, and **DENIED** as to Counts II, IV, V, and VII of the second amended complaint.

An order of partial dismissal will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   30th   day of September, 2013.